436 So.2d 1348 (1983)
Roslyn Gambino PLEMER
v.
Michael PLEMER.
No. CA-1001.
Court of Appeal of Louisiana, Fourth Circuit.
August 18, 1983.
Rehearing Denied September 22, 1983.
*1349 Floyd J. Reed, J.D., Reed & Reed, New Orleans, for plaintiff-appellant.
Philip R. Riegel, Jr., Parlongue & Riegel, New Orleans, for defendant-appellee.
Before BARRY, LOBRANO and WARD, JJ.
BARRY, Judge.
The plaintiff-mother appeals a change from sole custody of her 10-year old daughter to joint custody and asserts the court's plan is unworkable and the reduction in child support is unreasonable.

BACKGROUND
Roslyn Gambino (now Mrs. Marshall Hughes) and Michael Plemer were married on February 19, 1966 and had one child, Michele, born on April 12, 1973. The parents separated in 1976 and the mother obtained a legal separation in 1977 and a divorce one year later. She was awarded sole custody of Michele and the father had Michele generally at least one day a weekend, plus one full weekend a month, and several extended vacations or holidays a year.
In February, 1981 the former Mrs. Plemer was married to Marshall Hughes, with whom she and Michele now live. In September of 1981 Mr. Plemer married Kathleen Pierson, an attorney, who has two daughters, Shannon, age 16 and Elise, age 10, from her first marriage. Mr. Plemer and his wife reside in her house with the children.
The crux of the problem between Mr. Plemer and Mrs. Hughes surfaced after the father's marriage. Michele was accustomed to her father's exclusive company during visitation, but was unhappy at having to "share" her father with his new wife and step-daughters. According to Mrs. Hughes, Michele complained that when she visited her father at his new home, she spent little time with him and was relegated to her step-mother's children and their friends. There was some rivalry between Michele and Shannon, the 16-year old step-sister who, according to Michele, sometimes bullied her, and was allowed to smoke, swear, etc. Mrs. Hughes testified that, in early 1983, Michele refused to go to her father's house unless she would be guaranteed substantial, person-to-person interaction with her father undiluted by his new family.
Mr. Plemer testified that he wants Michele to become acclimated to his new marital status and develop a relationship with his wife and her children. During visitation he intentionally arranged weekends for everyone to be together and share their activities.
Michele experienced difficulty in adjusting to "sharing" her father. Mrs. Hughes contacted Mr. Plemer, told him of Michele's complaints, and, since he would not agree to spend each visit alone with Michele, she allowed Michele to forego the weekly visitations. Mr. Plemer then filed the subject rule for joint custody. Mrs. Hughes opposed any custody change and asked for an increase in child support, and Mr. Plemer responded with a predictable request to decrease the support.
Under our new joint custody legislation each party is to submit a plan to the trial judge. In his proposed plan Mr. Plemer agreed that Mrs. Hughes should retain physical custody of Michele during the school year, but he sought physical custody during three weekends a month, half of the summer vacation, and on alternate holidays. Mrs. Hughes refused to file a plan and opposed any change on the grounds that shared custody would be confusing to Michele and disruptive to everyone's lives. At trial, she suggested that Mr. Plemer's visits be curtailed, i.e., Michele be restricted to *1350 daytime visits twice a month and occasional extra dinners or short outings.
After a full hearing, which included testimony from Michele in chambers without the parents, the trial judge rendered a comprehensive and totally structured plan. Judge Duran continued Michele's basic lifestyle by granting physical custody to Mrs. Hughes for approximately nine months during the school year with Mr. Plemer to have all weekends save one per month. During vacation Mr. Plemer assumes physical custody with Mrs. Hughes sharing all weekends but one per month. The parent with physical custody is liable for the child's conduct. Holidays and special occasions are spelled out and alternated. Detailed reasons for judgment emphatically specify the need for Michele to avoid her mother's dominance and for the child to "mingle ... with other people...."

PHYSICAL CUSTODY
By enacting Act 307 of 1982 the legislature initiated a radical change in our laws on child custody. LSA-C.C. Art. 146, which is made applicable to changes in permanent custody under Art. 157, now creates a rebuttable presumption in favor of joint custody. The opposing parent has the burden to show that joint custody is not feasible. However, the legislation provides very little guidance as to the meaning of "joint custody" and how it should be implemented.[1]
We interpret "joint custody" to mean a physical sharing of the child in addition to both parents participating in decisions affecting the child's lifee.g., education, medical problems, recreation, etc. It's obvious no plan, with or without ironclad guidelines, could possibly resolve the infinite number of conflicts which can and will arise between divorced parents in their quest to share their child's life. It's a fact of life that when parents battle over their children, judges are cast as ad hoc parents. But the legal bottom line remains the sameour only concern is the best interests of the child.
We note the lower court's custody award slightly exceeds the amount of time requested in Mr. Plemer's plan; however, the Reasons are crystal clear that Michele would be better served by spending additional time with her father. The weekly schedule (over one year) places Michele with her mother approximately two-thirds of the time. We don't interpret joint custody to mean a fifty-fifty sharing of time. Each case will depend on the child's age, the parents' availability and desires, and other factors. Considering the child's age and the sole custody enjoyed by Mrs. Hughes in the past, we find the court's plan reasonable, feasible and in the best interests of Michele.
In order to clarify any possible ambiguity as to holidays and special days, we interpret the plan to mean that the parents will have custody on alternating holidays each year. However, allocation of the entire Christmas vacation to one parent is unrealistic because it totally deprives one parent of visitation during the two-week Christmas time. Even though we feel the parents would have worked out their own arrangement to share Christmas, out of caution we amend the judgment to provide that the non-custodial parent shall have visitation on December 25 from 2:00 p.m. to 10:00 p.m., subject to any mutually agreeable modifications.

EDUCATION
Both parents are to be informed and involved in Michele's educational development throughout her minority. During elementary school years the mother has "primary and ultimate" authority to make decisions, but during high school the judgment shifts this authority to the father. Vesting responsibility in Mrs. Hughes during grade school years is plausible because she has raised the child since birth, arranged her schooling, and shared these experiences with Michele.
However, we feel strongly that the trial judge erred by suddenly interrupting this scheme at the high school level. It seems illogical to shift educational responsibilities after one parent (Mrs. Hughes) would have guided this aspect of Michele's life for so long. There is no advantage to this change; *1351 in fact, continuity in such a critical area as education is in Michele's best interest. Therefore, this Court will maintain the "ultimate authority" in favor of Mrs. Hughes throughout Michele's high school years with Mr. Plemer participating as set forth in the court's plan.
Michele's educational expenses, including tuition, school transportation, uniforms and books, have been shared equally by Mr. Plemer under the prior decree. Considering the means and status of both parents it would be equitable for both parents to continue sharing these expenses.

MEDICAL TREATMENT AND EXPENSES
We certainly agree that all medical information should be available to both parents and all major medical decisions shared. However, it is impractical and unworkable, as provided by the lower court judgment, for "each parent ... to provide whatever medical treatment is necessary while the child is in his (her) physical custody." It is certainly more reasonable to have both parents pay equally all major medical expenses (not covered by insurance) regardless of who has custody if treatment becomes necessary. Also, because the majority of Michele's custody has been and will be with her mother, it should be her ultimate decision if the parents disagree as to major medical treatment.

SUPPORT
The primary area of child support has been the payment by Mr. Plemer of $400 per month for twelve months, which was set when Mrs. Hughes' income was much lower.[2] This was reduced by the trial court to $300 a month for the nine month school term. The $2,100 reduction, though sizable, could also be considered reasonable because of the increased custody time granted to Mr. Plemer. We note the combined community income of each parent is approximately $60,000, which, in Mr. Plemer's case, must also provide for his two step-daughters. There is no manifest error in the reduction of the support award.
Judge Duran's advice to the parents reflects our sentiments:
"These parents are to share equally their child, and wherever possible share equally in the decision-making process regarding this child. Both parents are to try to see things from the child's point of view, not their own, and at all times both parents are to act primarily in the child's best interest. The general attitude of each parent and their communication with their child shall be: Your parents have their differences, both have gone their separate ways, and each has remarried, each has established a new and different life for themselves. However, both of your parents love their child, both are interested in her welfare, and well being; both parents love and want to share their child; both parents want to be with the child as much as is possible."

DECREE
IT IS ORDERED:
The district court judgment is hereby amended:
The parents are to share Christmas as outlined;
Mrs. Hughes will have ultimate authority for the minor's education and medical treatment;
Mr. Plemer is to pay one-half of all major medical expenses and school expenses as outlined.
All other provisions of the judgment are affirmed. Each party is to pay his (her) own costs.
AMENDED IN PART; AFFIRMED IN PART.
NOTES
[1] Act 695 of 1983 sets forth specific criteria which will assist future determinations.
[2] The prior decree provided for review of the support award every two years. The parties did not seek to have this provision continued, nor is it necessary since either party can seek review if the circumstances warrant.