454 So.2d 374 (1984)
Mrs. Danuta KROTOSKI
v.
Dr. Wojciech KROTOSKI.
No. CA 1645.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
Milton E. Brener, Garon, Brener & McNeely, New Orleans, for plaintiff/appellee.
Joseph R. McMahon, Jr., New Orleans, for defendant/appellant.
Before REDMANN, GARRISON and BARRY, JJ.
GARRISON, Judge.
This is an appeal from a judgment of the district court dated May 20, 1983 granting joint custody to Dr. and Dr. Krotoski, who were divorced in July of 1982. Prior to the instant action, the mother had custody of the child and the father had broad visitation which he utilized religiously.
At present, the mother and daughter reside at the family home on Pine Street in New Orleans and the daughter attends Academy of the Sacred Heart.
The father originally resided and worked in New Orleans for the Public Health Service, but when the New Orleans facility closed, he accepted a job with the Health *375 Service at the Hansen's Disease Center in Carville. He resided in a trailer in Convent, Louisiana, until his recent purchase of a house in Baton Rouge.
The mother, having recently received a Ph.D. applied for several jobs, including one at Tulane University and one at L.S.U. She received a number of out-of-state job offers, but none locally. The out-of-state job offers included Harvard, the University of Illinois and the University of California in Irvine. Both of the Krotoskis are originally from the Irvine, California area and both maternal and paternal grandparents, aunts, and uncles reside in Irvine. The mother accepted the job in Irvine. Thus it is apparent that the child will be leaving the New Orleans area regardless of which custody plan were implemented.
Each parent submitted an individual custody plan from which the trial court fashioned its plan.
Appellant raises two issues on appeal:
1. The lower court abused its discretion in allowing a minor child to be taken out of this jurisdiction thereby defeating the mandates of the joint custody provisions of the law.
2. The custody awarded is not true joint custody.
The first specification of error is a double-edged sword that cuts both ways. Although appellant argues that appellee seeks to remove the child from this court's jurisdiction, appellant admits seeking to do the same thing. Petitioning the court for permission to remove the child is the proper action to be taken and was done in the instant case. Accordingly, this issue is without merit and will not be further addressed.
Turning to the second specification of error, the trial judge's plan provides that the child reside as follows:
"During the school year the child is to reside with her mother in California; during the summer (school) vacation period the child is to reside with her father. The first two weeks of the child's summer vacation shall be spent with the mother; thereafter until one week before school begins in the Fall, the time is to be spent with her father. Additionally, the child is to spend the Christmas and Easter Holiday periods (off school) with her father."
Appellant argues that this provision does not constitute true "joint" custody and that true "joint" custody would occur only if the child were to alternate school years in California and Baton Rouge with corresponding alternating vacation custody. Both experts testified that this scheme would be so disruptive to the child's development that it would result in permanent damage to the child.
Under the trial judge's plan both parents retain joint decision-making ability in the areas of school attendance, religious training, medical care and treatment, and activities. Both parents receive duplicate report cards, progress reports, medical records, etc. Both parents pay child support and the plan specifically provides:
"Both parents are to keep one another informed as to their respective addresses and phone numbers. They are to confer with each other regularly by telephone or in any other manner mutually agreeable regarding the welfare of and plans for the child. They are to share jointly in the decision making process for the health, education, care and development of this child."
The wisdom of Solomon and the chicanery of Mr. Bill notwithstanding, this court has still not determined how to divide a child in two equal halves or how to order one tiny person to be in two places at the same time. This court is still bound by the laws of physics and a perfect 50/50 split is not feasible over a distance of 2,000 miles. While 2,000 miles is an extreme case, even if both parents were located in the same city, it would make no difference in the outcome because joint custody means a 50/50 sharing of responsibility, not a 50/50 sharing of time.
As so aptly stated by Judge Barry in Plemer v. Plemer, 436 So.2d 1348, 1350 (App. 4th, 1983):

*376 "We interpret `joint custody' to mean a physical sharing of the child in addition to both parents participating in decisions affecting the child's lifee.g., education, medical problems, recreation, etc. It's obvious no plan, with or without ironclad guidelines, could possibly resolve the infinite number of conflicts which can and will arise between divorced parents in their quest to share their child's life. It's a fact of life that when parents battle over their children, judges are cast as ad hoc parents. But the legal bottom line remains the same our only concern is the best interests of the child.... We don't interpret joint custody to mean a fifty-fifty sharing of time. Each case will depend on the child's age, the parents' availability and desires, and other factors. Considering the child's age and the sole custody enjoyed by Mrs. Hughes in the past, we find the court's plan reasonable, feasible and in the best interest of Michele." (emphasis added).
Lastly, appellant argues that the school year/vacation custody split arrangement should be upheld but that appellant should be granted custody during the school year instead of appellee.
In both locations the child is to continue her parochial school education, piano lessons, and gymnastics. Both parents intend to locate the child in a suburban middle to upper-middle class area and to provide the child with her own room. There are only two major differences involved in the proposed environments. In Irvine, the child would have the benefits of an extended family as both sets of grandparents and other collaterals are located there. In emergency situations it is expected that extended family members will aid in babysitting duties, whereas in Baton Rouge, a next door neighbor, who is a recent acquaintance, and the wife of a co-worker would fulfill those emergency duties. In Irvine, the child would additionally have the security of a live-in full-time babysitter, whereas in Baton Rouge, the court can only rely on appellant's representations that he can leave his full-time job as early as 2:30 p.m. on a daily basis in order to prevent the child from being alone or with recent acquaintances from the end of the school day until 5:00 p.m.
The second difference between the two environments is psychologically based. As the child is approaching puberty, both experts testified that it would be more beneficial to the child to be with a same-sex parent during the difficult puberty transitional years.
Like the court in Plemer, we find that the best interests of the child are best served by maintaining school year custody in the current custodial parent. We find no error in the trial court's ruling on this issue.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.
BARRY, J., joins majority and would modify.
BARRY, Judge, joining majority and would modify.
The majority cites Plemer v. Plemer, 436 So.2d 1348 (4th Cir.1983), but falls short of following its guidelines.
I find that "... allocation of the entire Christmas vacation to one parent is unrealistic..." (at p. 1350). It is not fair for either parent to be totally deprived of Christmas and Easter holidays for the duration of the child's minority. I would grant Mr. Krotoski custody for Christmas vacation in even-numbered years and for Easter vacation in odd-numbered years. Mrs. Krotoski should have custody for Christmas vacation in odd-numbered years and for Easter vacation in even-numbered years.
As to the child's medical needs, Plemer said:
"We certainly agree that all medical information should be available to both parents and all major medical decisions shared.

*377 ... Also, because the majority of Michele's custody has been and will be with her mother, it should be her ultimate decision if the parents disagree as to major medical treatment." (At p. 1351).
The trial court's judgment provided as follows:
"MEDICAL CARE AND TREATMENT
Both parents are to be kept fully informed as to the health, treatment and medical status, records, etc., of the child. Any planned treatment, selective surgery, etc., is to be planned in advance with both parents participating in the process. Routine medical care and treatment, and any emergency treatment needed may be furnished and obtained by the custodial parent at the time the need arises. The primary authority insofar as selection of medical doctors, hospitals, etc., shall vest in the father."
The majority of the child's custody will be with Mrs. Krotoski. It is unrealistic to have the absentee parent, Mr. Krotoski, with primary medical authority. I would assign primary medical decisions to Mrs. Krotoski.
I would modify accordingly.