471 So.2d 1071 (1985)
Samuel L. JOHNS, Plaintiff-Appellee,
v.
Susan Gayle Corbin JOHNS, Defendant-Appellant.
No. 84-495.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*1072 Alvis J. Roche, Lake Charles, for defendant-appellant.
Cecil R. Sanner, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
In this case Samuel L. Johns was granted a divorce from Susan Gayle Corbin Johns following a separation. In the separation judgment the parties were granted joint custody of their two children. Both are girls. At the time of trial Trixie Lynn Johns was eight years old and Tosha Lynn Johns was three years old. The judgment of separation granted physical custody of the two children on alternating weeks. The judgment of divorce appealed from continues the joint custody arrangement.
The questions we have in this appeal brought by the wife and mother are these:
1. Did the trial court err in refusing to reconsider the question of joint custody, or at least reconsider the advisability of the alternating of physical custody on a weekly basis?
2. Did the trial court err in increasing child support from $75 per month to only $150 per month? The wife urges that the increase to $150 is insufficient.
3. Did the trial court err in failing to grant the wife's reconventional demand asserted against her husband (appellee) for damages based on his alleged contempt and alleged intentional tort in failing to return the two children to her in conformity with the prior separation judgment of the court?
The appellee husband does not complain of the increase in child support from $75 to $150 per month.
Susan Johns appealed.

PROCEDURAL HISTORY
Samuel E. Johns filed a petition for divorce and requested the continuation of the joint custody and child support provisions established by agreement of the parties at the time of the separation judgment. Defendant, Susan Johns, answered and brought a reconventional demand to change or modify the custody plan and increase child support. By supplemental reconventional demand, Susan Johns sought damages for emotional anguish allegedly due to plaintiff's refusal to return the two minor children of the marriage in accordance with the prior order of the court. The trial court granted the divorce, continued the previous joint custody plan, increased child support from $75 to $150, and denied the claim for damages. We affirm the denial of damages and the increase in the support award but remand *1073 the custody question for re-evaluation of the joint custody plan consistent with the opinion expressed herein.

FACTS
On September 21, 1982, Samuel Johns obtained a judgment of separation which further provided for child support in the total amount of $75 per month and for joint custody as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the joint custody agreement between the parties is hereby granted and recognized as follows:
"The custody of Trixi Lynn Johns and Tosha Lee Johns shall vest in each party for a one-week period, transferring custody each week at Sunday at 5:00 p.m., beginning Sunday, September 26, with Susan Gayle Corbin Johns having custody of the two minor children; all custody shall be subject to the reasonable visitation rights of the parties.
"The court finds that this joint custody agreement is in the best interest of the children.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties hereto, Samuel L. Johns and Susan Gayle Johns, are granted the right to change the dates of the custody of the minor children, by mutual written agreement, without the necessity of judicial approval hereafter."
In the petition for divorce filed on July 8, 1983, Samuel Johns alleged as follows:
"In the Judgment of Separation, a joint custody agreement was completed between the parties concerning the minor children born of the marriage, as well as child support, medical expenses, and medical insurance, and the right to change the dates of custody of the minor children by mutual written agreement. Petitioner desires that these provisions of the Judgment of Separation be incorporated in the Judgment of Divorce as though set forth at length herein."
At the time of the separation, plaintiff Samuel Johns was an unemployed union carpenter receiving $180 per week in unemployment compensation, but earned a total of $14,901 for the year 1982. At trial of the present matters on March 27, 1984, Johns was again unemployed and was receiving $205 per week in unemployment compensation, but had received $2,275 as a 1983 income tax refund and had earned a total of $29,490 for the year 1983. Johns testified his present monthly expenses total $1,903 and that his total savings amounted to $140.
At the time of separation, Susan Johns was employed at a time-save store and living with her mother. At trial of the matter, Susan was employed at an office supply store earning $154 per week and had $860 in monthly expenses. Susan petitioned for and was allowed to proceed as a pauper.
In the petition for divorce, Samuel Johns had requested the continuation of the above described custody plan, which had been in effect for 18 months at the time of trial. In her answer, defendant Susan Johns requested that the plan be changed or modified and proposed the following changes, evidently meaning that Samuel Johns be restricted to visitation rights according to the following schedule:
"I. As to Trixie Lynn Johns, age 7:
a. Two week-ends per month, beginning at 6:00 p.m. o'clock on Friday and ending at 6:00 p.m. o'clock on Sunday.
b. To split the major holidays of each year, with the mother to have said child all of Christmas day.
c. Two weeks in the summer.
"II. As to Tosha Lee John, age 2:
a. One week-end per month, beginning at 6:00 p.m. o'clock on Friday and ending at 6:00 p.m. o'clock on Sunday.
b. Two days out of any major yearly holiday.
c. Same two weeks in the summer as her sister."
Samuel Johns testified he believed the custody plan in effect was in the best interest of the children. He admitted the *1074 youngest child always cried when he picked her up on Sunday, but only until she got in the vehicle with him. He described the girls as happy, loving children, who played well together. Johns cared for the children himself and took them on outings. An active member of the Pentecostal Church, Johns and the girls attended church and related activities frequently. Johns did not allow the children to have a TV, go to movies, skate, cut their hair or wear pants.
Johns testified he intended to get married soon to Angel Blanchard, who testified at trial that she and Johns had just purchased a new three bedroom trailer. Johns' new family will include Angel's 14 and 15 year old girl and boy. Johns' two children will share a bedroom with the teenage girl.
Susan Johns testified she did not believe the plan in effect was in the best interest of the children because the two households were too different. She testified that both girls were tense, nervous and touchy when they returned from Samuel's and that the youngest usually cried all day before going. Susan stated the children did not complain so much about not having a TV, but told her they missed the things they did at her house.
Susan testified she believed the visitation arrangements were so detrimental that she took the children for mental health consultation about six months after the plan was initiated. She was advised to wait awhile and bring one of the girls back when she was older.
Susan and Samuel both testified concerning an incident that also served as the basis for the claim for damages. Susan went to Samuel's on August 14, 1983, to pick up the children. Samuel refused to allow the children to go and testified that his reason was as follows:
"Because I have requested her a lot of times not to come there showing her body in shorts. And she would notShe would not listen. And she come to where I live, where I felt like I had the rights to be able to tell people, hey, don't come where I live in that state.... I asked her if she would please go home and put on some pants and come back where I could let her have the children."
Susan testified that after Samuel refused her the first time, she got witnesses and went back. She did not go on the property again but stayed on the road. Samuel still would not let the children go. Susan returned on two more occasions. Once, no one was at home. On the second occasion, Samuel was with friends and still would not let Susan have the girls. Susan contacted her attorney on Monday and Wednesday and finally obtained a court order for the girls return. She picked up the girls with the assistance of the sheriff's department. Susan testified the entire incident caused her great distress.
Susan also related another incident that occurred when she arrived to pick up the girls at 4:45 instead of 5:00 p.m. Samuel let the girls go, but when Susan left, she saw Samuel's vehicle coming up fast behind her, like he was going to run her off the road. She stopped and Samuel pulled the girls out of the car, telling her not to come until 5:00 p.m. Susan testified that there had been no further incidents since Samuel started picking the children up instead of having her bring them to him.
Susan stated she is a Baptist and tried to be understanding of Samuel's beliefs.

ISSUES
The issues on appeal as generally stated by the parties are as follows:
Whether the trial court erred in ruling that the weekly alternating visitation with the two children by each parent is in the best welfare and interest of the children.
Whether the increase in child support from $75.00 per month to $150.00 per month was sufficient.
Whether the trial court erred in ruling that no award should be made to appellant due to the contempt and intentional tort of appellee in not returning the children to appellant as stated in the prior orders of court.

*1075 CUSTODY
Appellant contends on appeal that the trial court erred in ruling the weekly visitation with the two children by each parent in alternating weeks is in the best interest of the children. In support of this contention, appellant cites the case of Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983), for the proposition that joint custody does not require a physical sharing of children on a 50-50 basis. As we understand it, appellant does not complain of the trial court's failure to adopt the plan she proposed: instead, she complains of the specific terms of the custody agreement that was carried over from the time of separation.
Unfortunately the trial court did not rule on the merits of the weekly visitation; instead, the trial court merely considered whether Mrs. Johns had presented sufficient evidence to support the specific changes she requested.
The trial judge ruled from the bench at the conclusion of the trial. In oral reasons (recorded in the transcript) the judge stated at the outset that he considered he had only one choiceto continue the present plan or adopt Mrs. Johns' proposed changes. The trial judge appears to have based his rejection of Mrs. Johns' plan on the burden of proof he felt was required of the party seeking the change in a court-ordered joint custody plan. Ultimately, however, the trial judge asserted he had no expertise in the area of making custody arrangements and stated he was unable to make any modification for lack of suggestions from the parties. The portions of the trial court's oral reasons pertinent to the custody issue are set forth as an appendix at the end of this opinion.
We are concerned by the trial judge's assumption that he could not actively participate in the custody controversy presented. We feel that he misconceived his role in the process. In the case of Turner v. Turner, 455 So.2d 1374 (La. 1984), our Supreme Court described the role of the trial judge in custody matters as follows:
"The trial judge sits as a sort of fiduciary on behalf of the child, and must pursue actively that course of conduct which will be of the greatest benefit to the child. It is the child's emotional, physical, material and social well-being and health which are the judge's very purpose in child custody cases. He must protect the child from the harsh realities of the parents' often bitter, vengeful, and typically highly emotional conflict. The legislature has mandated that the judge shall look only to the child's interests.
"In furtherance of this important goal, the court has been vested with broad and independent powers. It may, for example, order that an investigation be conducted into the home lives of the parties, the psychological health of the child, or into any other factor which the judge deems to be important in his determination of the child's best interest. C.C. 146(C)(3). In this way, the court can fulfill its obligations to the child."
* * * * * *
"The legislature, furthermore, went beyond the mere establishment of a guiding list, and established the rebuttable presumption that joint custody arrangements would be in the child's best interest. C.C. 146(C). This presumption has caused some confusion. Some lower courts seem to believe that the article requires granting joint custody. Such is not the case; the article clearly provides that there is only a presumption in favor of joint custody, and that it may be rebutted upon a proper showing that a different arrangement is in the child's best interest. Such a showing now must include a consideration of eleven specific, enumerated factors, plus any `other factor' which the trial court deems to be relevant. C.C. 146(C)(2)(a)-(1). Article 146 provides further that `the burden of proof that joint custody would not be in the child's best interest shall be on the parent requesting sole custody.' C.C. 146(A)(2). This provision does not create *1076 any extraordinary burden on the party requesting sole custody.
"As in any matter in which there is a rebuttable presumption, the burden rests with the party challenging the presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one. A presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary. See 9 J. Wigmore, Evidence, Sec. 2491(3) (3d ed.). `Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear.' Lincoln v. French, 105 U.S. (15 Otto) 614, 617, 26 L.Ed. 1189 (1881).
"The article 146 presumption only compels the judge to award joint custody in those cases where other things are equal; or where there is sufficient evidence to rebut the presumption; or whenever neither parent alone would be able to manage a sole custody arrangement, and where it cannot be shown that it would be detrimental to the child to remain in parental custody. Effectively, the presumption only provides the judge with a first choice, which choice must be rejected in the face of evidence which tends to disprove the conclusion."
* * * * * *
"... In its capacity as a lookout for the child, the court is obligated to consider additional factors.... The trial court cannot rest on the legislative presumption to solve its case, but must become an active participant in the case."
Under the elucidation given above, it is not sufficient for the trial court to simply choose between the respective positions of the two parents. There are numerous alternatives open to the trial court, including the appointment of experts and the requirement of additional evidence from the parties. In particular, the trial court cannot disclaim expertise and refuse to consider a custody issue brought by the parties.
This is not to say we do not appreciate the trial court's dilemma. Mr. Johns requested a continuation of the previous joint custody plan. Mrs. Johns presented a plan that was tantamount to sole custody. While Mrs. Johns obviously desired and requested a modification of the joint custody plan in the alternative to her demand for sole custody, she failed to present an alternative joint custody plan. The trial court had authority to require the submission of alternative plans if it wished to give consideration to possible modifications in the custody arrangements.
C.C. Article 146 provides that the trial court shall, unless waived by the court for cause shown, require the parents to submit a plan for implementation of joint custody. Adams v. Adams, 441 So.2d 490 (La.App. 2d Cir.1983). The questions of joint custody and approval of a plan of implementation should be decided together. Cleary v. Cleary, 447 So.2d 60 (La.App. 1st Cir.1984). Accordingly, we remand this case with specific direction that the trial court order the parties to submit alternative plans and that the trial court render a decision with specific consideration of the enumerated factors listed in Article 146. The trial court should reopen this case to receive evidence of "other factors" which it may hear in order to make its decision. We observe that there is no objection to maintaining joint custody but granting more liberal physical custody to one party than the other.

SUPPORT
Based on the evidence and status of the case at the conclusion of the trial we affirm the increase in child support to $150 from $75. In the event that the trial court on remand alters the custody arrangement in a manner that alters the appropriateness of the increase, or the amount, for the future, that question may be considered in conjunction with the change to be made.

DAMAGE AWARD
We agree with the trial court that an action between ex-spouses for refusal to *1077 comply with a custody order is not authorized under our law. The penalty for failure to obey a court order is contempt under LSA-C.C.P. articles 221-227.

CONCLUSION
For the foregoing reasons the judgment of the trial court is affirmed except as to the custody matter. That portion of the case dealing with custody and the custody plan are remanded to the trial court for reconsideration of the custody matter. The costs of this appeal are assessed equally to appellant and appellee.
AFFIRMED IN PART; REMANDED IN PART.
DOMENGEAUX, J., concurs and assigns reasons.

APPENDIX
The following is an excerpt from the trial court's oral reasons for judgment which pertain to the custody issue:
"Now, on the custody issue, as I see it I have a choice between doing one of two things, either of continuing the present custody plan and order or adopting and ordering the institution of the plan requested by Mrs. Johns. Once a joint custody plan has been ordered the burden is on the parent seeking to institute another plan to show that the best interests of the children require the change. It is not sufficient to show that problems exist. I dare say problems will exist in almost any custody arrangement, joint or otherwise. In this instance there is an insufficient showing, in my opinion, that adoption of the plan requested by Mrs. Johns would be in the best interest of the children, that it should be preferred over the present joint custody plan. Her requested plan is a radical change from the present custody order and is less in keeping with the legislative intent of joint custody. The legislature has declared that joint custody is presumed to be in the best interest of children and that joint custody means that the parents shall, to the extent feasible, share the physical custody of the children. Mrs. Johns' request does not accomplish this as much as does the present plan. Now, a part of the difficulty apparently that has been experienced in the operation of the present plan lies in the difference in the religious beliefs of the parties. I feel that certainly these differences, or this problem, if one should call it that, these differences were certainly anticipated at the time that the parties agreed upon the present plan. Mrs. Johns was aware, undoubtedly, of Mr. Johns' religious principles that he abides by, such as the cutting of a woman's hair, such as his not having television in his home, whatever the other particular things are that he believes in that is not a part of Mrs. Johns' faith. These differences had to be known to Mrs. Johns at the time that the present plan was agreed upon. The problems had to have been anticipated. I acknowledge that perhaps the present plan is not ideal, and perhaps it is not the best. But whatever problems or deficiencies there may be in the plan do not justify the radical change to the plan requested by Mrs. Johns. The Court is satisfied that both sides love their children and both parents take good care of them. I only hope that each parent will recognize that about the other parent and will use that as a basis for perhaps arriving at an agreement to perhaps modify the present plan. That was anticipated in the judgment that was rendered previously, the judgment of separation, in that the parties had included in the judgment recognition of their right to change the aspects of the custody of the children by mutual written agreement without the necessity of judicial approval. Hopefully if some changes can be reasonably agreed upon that the parties will do so, that they will think more in terms of what is in the best interests of the children rather than thinking in terms of what my rights are as regards the children and what my preferences are, what things make me happier, please me more, rather than thinking about if some changes can be made that may not *1078 be completely to my liking but still might be in the best interests of the children. Hopefully, they will approach the problem in this manner, recognizing the love of the other parent for the children and the children's love of each of their parents."
* * * * * *
"THE COURT: I didn't make any changes. Perhaps I didn't make myself clear, that I think I have a choice. My choice is limited to the present plan or to accepting your plan, not for me to come up with other things that I hear nothing about, no testimony about, or for me to be able to say, I think that such and such a change would be in order, a better change. That has not been submitted by the parties at this hearing. I have heard no testimony about it. And I'm certainly in no position to be able to make modifications in the plan that is presently in existence. I do not have the expertise to do so, nor do I have the expertise when no party has requested anything else other than one party requesting it remain the same and another party requesting that it be this radical change to a particular change that was requested here. It's either one or the two in my opinion."
DOMENGEAUX, Judge, concurring.
See my dissenting opinion in Brooks v. Brooks, 469 So.2d 398 (La.App. 3rd Cir. 1985). I can think of no circumstance which would make it propitious to alternate children physically with each parent every week. This is even more objectionable than the two week shifts which were ordered in Brooks.