484 So.2d 959 (1986)
Pamela B. PEVEY
v.
Paul T. PEVEY
No. CA 85 1238.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
Curtis Baham, Jr., Hammond, for plaintiff-appellant.
Thomas B. Waterman, Ponchatoula, for defendant-appellee.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This action commenced with a petition by the father of two minor children to amend the physical custody provisions of a joint custody judgment. The divorced parents of the children previously had been awarded joint custody, with the mother having physical custody during the school term and the father having physical custody during the summer vacation. After a hearing, the trial court amended the physical custody provisions of the joint custody judgment to provide the father would have physical custody during the school term and the mother would have physical custody during the summer vacation. The mother took this devolutive appeal.

FACTS
Paul and Pamela Pevey were married on August 10, 1974. Their matrimonial domicile was in Ponchatoula, Louisiana. Two children were born of this marriage, Stacey and Jennifer, now aged 10 and 9, respectively. The Peveys were divorced in November of 1979. The divorce decree gave Pamela sole custody of the children, with Paul having visitation rights every other weekend. Paul retained the family home.
Shortly after the divorce, Pamela began dating a man named Bill. She and the two children lived with Bill off and on for close to three years. Pamela moved out of Bill's house and bought a home where she lived with the children for two years. She continued seeing Bill daily, although she was no longer living in his home. In May of 1984, Pamela met a man named Kirk. Pamela began seeing Kirk but continued her relationship with Bill. Pamela continued seeing Bill until February 8, 1985, on which day she moved to Houston, Texas, to live with Kirk. Pamela and Kirk were married on April 4, 1985. Pamela and her new husband now live in Houston.
On February 10, 1984, the father filed a petition for joint custody. On June 11, 1984, the trial court granted joint custody and provided the mother would have physical custody during the school term and the *960 father would have physical custody during the school vacation. Liberal visitation was granted to the noncustodial parent and holidays were alternated between them.
Paul Pevey is remarried and now has one child by this marriage. Paul's second wife, Angela, teaches at the parochial school the children attend.
The weekend that Pamela moved to Houston was a weekend Paul was to have the children. Pamela dropped the children off with Paul and did not tell Paul where she was going. She told Paul that she would be gone for a while. She did not tell Paul where she was for two weeks. It was during this period that Paul again tried to have the custody order changed.

PHYSICAL CUSTODYABUSE OF DISCRETION
The plaintiff mother contends that the change of custody was clearly erroneous because such change is not in the best interest of the minor children.
La.C.C. art. 146 provides that the appropriate standard to be applied by the trial court in determining the custody of a child of a dissolved marriage is the "best interest of the child." This standard is repeated throughout Article 146 and is the sole criterion to be met in making the award. Turner v. Turner, 455 So.2d 1374 (La.1984). La.C.C. art. 146(C)(2)(a)-(l) provides the following:
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child.
(2) The presumption in favor of joint custody may be rebutted by a showing that it is not in the best interest of the child, after consideration of evidence introduced with respect to all of the following factors:
(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
Neither side is contending that joint custody is not in the best interest of the children, but the mother argues that it would be in the best interest of the children if they lived with her and her new husband in Houston during the school year.
In his reasons for judgment, the trial judge observed as follows:
I told the attorneys that in making my ruling I am strictly trying to do what I think is in the best interest of the two children. And I am not making my ruling in any way to punish anybody or hurt anyone. I heard the testimony about the mother's living conditions in the past and I am not holding that against you in any *961 way. From what I have heard today your marriage to Mr. _____ [Kirk] certainly sounds like a step in the right direction on it. I was very impressed with him and I am impressed with you as a mother. I certainly don't feel that there has been any testimony presented that you are an unfit mother. I do feel, based on the testimony that I have heard, that it will be in the best interest of the children if they remain in their present location. I am not going to change the custody from the joint custody but what I am going to doI want there to be joint custody but I want the roles changed so that the children reside in Ponchatoula during the school period and I want very liberal visitations with the mother and I want the children with the mother during the summer period. Now, mam I can understand how you feel about it, it is a difficult thing to rule on but I am doing what I think is in the best interest of the children. I do not think it would be in the best interest of these children to pick them up from Ponchatoula where all of the grandparents reside and move them to Houston, Texas where there is no one except the mother and the stepfather. (Emphasis supplied.)
The record reveals that, when the children were dropped off for their weekend visit with their father on February 8, 1984, they had no idea that their mother was moving to Texas. Pamela testified that she did not tell the children about her impending marriage out of fear for their safety. She claims that she only continued dating Bill out of fear and that she did not want him to know that she had moved to Houston to marry Kirk. Pamela testified that she was in mortal fear of Bill; therefore, she hid her marriage from him. She is now no longer afraid of Bill. Pamela further testified that she had been forced to smoke marijuana by Bill and that she regularly took Valium from the time that Jennifer was six months old until her move to Houstonin other words, for close to eight years.
The children have always lived in the Ponchatoula-Hammond area. Both sets of grandparents, as well as all the maternal and paternal relatives, reside in the Ponchatoula-Hammond area. The children have always attended school and church in the Ponchatoula-Hammond area. Both parents love their children, and each expressed a willingness to facilitate and encourage a continuing parent-child relationship between the children and the other parent. While neither parent was shown to be morally, mentally, or physically unfit or incapable of providing for the children's material, educational or emotional needs, there is evidence that the mother has, in the past, been unstable.
Paul Pevey operates a café and drives a school bus. He is also involved with the volunteer fire department and a children's baseball team. Mr. Pevey is very involved in various civic activities. The trial judge took all of this into consideration and admonished Pevey to cut back on his working hours and other activities in order to devote more time to his family. Angela Pevey, the girls' stepmother, was expecting her first child at the time of the trial. The girls were afraid that if they lived with their father and stepmother that they would "drive them up the wall" once the baby was born. The little girls told the trial judge that they felt little girls should live with their mother. They said that they felt this way because their mother had always stayed with them when they "were little" and their father had gone to work. The girls' stepmother, Angela, works as a schoolteacher; therefore, she will be at work while the girls themselves are in school. The trial judge considered all factors and determined that it would be in the children's best interest to live with their father during the school year.
After reviewing the record,[1] we cannot say that the trial judge abused the *962 much discretion vested in him in such matters.
The mother also claims in her brief the following:
Finally, the standard of appellate review is whether the trial court has manifestly abused its much discretion in fixing custody as it did in the case at bar.
...
It is submitted that the judgment in the instant case awarding "joint custody", but naming one parent (the father) as primary physical custodian, with the other parent (the wife) having certain visitation rights (coupled with limited custody) is not truly "joint custody" within the concept of the La.C.C. Art. 146. The judgment is, in effect, no different than an award of sole custody to the father with the mother having summer end [sic] week-end visitation rights. The judgment ignores, without explanation or reason, the express mandate of Article 146 that the parents "share the physical custody" of the child and that "physical care and custody shall be shared by the parents."
Joint custody means a physical sharing of a child with both parents' participation in decisions affecting the child's life, but it does not necessarily mean an equal sharing of time. Meylian v. Meylian, 478 So.2d 218 (La.App. 3rd Cir.1985); Doucet v. Doucet, 465 So.2d 175 (La.App. 3rd Cir.1985); Krotoski v. Krotoski, 454 So.2d 374 (La.App. 4th Cir.1984); Carroway v. Carroway, 441 So.2d 494 (La.App. 2nd Cir.1983). Each case will depend on the child's age, the parents' situations and other factors relevant to a particular child custody dispute. Doucet v. Doucet, 465 So.2d at 177. Stability of environment is also a legitimate factor to be considered in a custody case. Primm v. Primm, 409 So.2d 1288 (La.App. 2nd Cir.1982).
La.C.C. art. 146(D) provides, in pertinent part, as follows:
For purposes of this Article, "joint custody" shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2).
[Emphasis supplied.]
Many joint custody plans provide for physical custody with one parent during nine months of the year corresponding to the school year, with the child residing with the other parent during three months corresponding to the summer vacation months. Meylian v. Meylian; Hatchett v. Hatchett, 449 So.2d 626 (La.App. 1st Cir. 1984), writ denied, 457 So.2d 11 (La.1984); Johnson v. Johnson, 444 So.2d 283 (La. App. 1st Cir.1983). The nine month-three month custody plans are desirable when the parents live in different cities, different states, or when one of the parents lives relatively far away from the child's school.
The mother's assignments of error are without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] In his reasons for judgment, the trial court referred to a report by a Dr. Strobach and held the record open for the report to be filed. Filed in the record is the deposition of Dr. Richard P. Strobach, an M.D. specializing in psychiatry. Dr. Strobach had the children psychologically tested by Dr. Thomas Fain and interviewed the children, Pamela, Paul, Angela and Kirk. Dr. Strobach recommended the physical custody of the children be given to Pamela, subject to certain stipulations which included extended visitations with the father. On cross-examination, Dr. Strobach conceded this was a very difficult decision.