# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1049

**JAMES RANDALL MAXWELL**

**VERSUS**

**JENNIFER STANLEY (LAVIGNE)**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 41569-B
HONORABLE LEO BOOTH, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy H. Ezell, and Shannon J. Gremillion, Judges.

**REVERSED AND REMANDED**.

Mark A. Holden
5637 Superior Drive, Suite B-5
Baton Rouge, LA 70816
(225) 296-0018
COUNSEL FOR APPELLANT:
    Jennifer Stanley (Lavigne)

Jack H. McLemore, Jr.
200 Advocate Row, Suite B
Vidalia, LA 71373
(318) 336-9189
COUNSEL FOR APPELLEE:
    Jason Randall Maxwell

**COOKS, Judge.**

In this child custody case, the mother appeals the trial court's judgment which modified the stipulated custodial agreement to name the father as the primary domiciliary parent. For the following reasons, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

Jason Randall Maxwell and Jennifer Stanley Lavigne are the biological parents of the minor child, Brooklyn Claire Maxwell, who was born on March 1, 2006. The two were never married but were living together in Vidalia, Louisiana at the time of birth. In May of 2007, Jennifer moved into her mother's home in Natchez, Mississippi. In March of 2009, Jennifer married Michael Lavigne. In July of 2009, she moved to Prairieville, Louisiana where Michael resided.

On June 30, 2006, both Jason and Jennifer filed a "Petition for Determination of Custody, Child Support, Visitation, and Incidental Matters." The court signed an Order providing the parties had joint custody, with Jennifer designated as the domiciliary parent. Visitation was set forth with an evenly distributed holiday visitation schedule. Jason was also ordered to pay $200.00 per month in child

support and to maintain Brooklyn on his insurance. The parties were ordered to split all medical and dental expenses not covered by insurance.

On May 21, 2007, Jason, filed a "Petition to Amend Petition for Determination of Custody, Child Support, Visitation, and Incidental Matters and Order." This petition requested a modification of the visitation schedule to specifically set forth that Jason would be granted visitation with Brooklyn every other weekend beginning at 5:00 p.m. on Fridays and ending at 5:00 p.m. on Sundays. An Order was signed setting a Rule to Show Cause on the matter for June 11, 2007. No hearing was held.

On August 8, 2007, a "Second Petition to Amend Petition for Determination of Custody, Child Support, Visitation, and Incidental Matters and Order" was filed by Jason. It proposed to modify the custodial arrangement so that each party would have physical custody of Brooklyn for two consecutive weeks at a time. A hearing was set for September 13, 2007. On that date, the parties entered into a consent judgment in which they were awarded equal shared custody with Jennifer named the domiciliary parent. The visitation schedule was agreed upon.

On March 2, 2010, Jason filed a "Petition to Modify Custody, requesting a modification of the custodial arrangement so that Jason would be named the domiciliary parent of Brooklyn subject to reasonable visitation for Jennifer. The proposed visitation schedule provided for visitation with Jennifer every other weekend and an even split for holidays. The reason given for the requested

modification was Jennifer's relocation to Prairieville, along with alleged health and/or hygiene problems that occurred while Brooklyn was with Jennifer.

On March 24, 2010, the matter was continued on a motion from Jennifer, and a hearing date was set for April 26, 2010. Jennifer also submitted "Interrogatories and a Request for Production" to Jason on March 28, 2010. On April 12, 2010, Jennifer filed an "Answer, Exceptions, and Reconvention" in the matter. Exceptions of No Right and No Cause of Action were filed alleging Jason's "Petition to Modify Custody failed to allege a material change in circumstances necessary for a change of custody. In her reconventional demand, Jennifer requested back due child support. On April 19, 2010, Jason submitted answers and responses to the interrogatories and request for production made by Jennifer.

The matter proceeded to trial on April 26, 2010, however, due to the district court's docket, it was continued to May 10, 2010. The matter was heard on May 10, 2010. The district court took the matter under advisement, and requested post-trial memorandum from the parties. The district court rendered judgment on June 17, 2010, denying Jennifer's exceptions of no right and no cause of action. Joint custody was maintained, but custody was modified to name Jason primary domiciliary parent, with specific visitation fixed for Jennifer. Although the parties stipulated that both support and modification of custody and visitation would not take place until school started, the trial court disregarded this stipulation and terminated child support to

-3-

Jennifer prior to school beginning and awarded the tax dependency exemption to Jason prior to school beginning.

Jennifer has appealed the judgment, asserting the trial court erred in failing to continue her as domiciliary parent and in terminating child support paid to her effective on June 16, 2010 despite the stipulation to the contrary. Jennifer also argued the trial court erred in excluding the testimony of her husband, Michael Lavigne, because he was not included on her witness list prior to trial.

### ANALYSIS

There is a distinction between the burden of proof required to change a custody plan ordered pursuant to a considered decree and the burden of proof required to change a custody plan ordered pursuant to a non-considered decree (or stipulated judgment). Once a considered decree of permanent custody has been rendered by a court, the proponent of a change of custody bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). In cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in *Bergeron* is

inapplicable. *Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478. Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child. *Id.* In the case before us, there was no considered decree, thus the heavier *Bergeron* standard does not apply and Jason must only prove that the proposed change to him as the domiciliary parent was in the best interests of Brooklyn.

Louisiana Civil Code Article 131 requires that the award of custody be based on the best interest of the child. The trial court also recognized that when parents cannot agree as to a custody arrangement, La.Civ.Code art. 134 provides twelve relevant factors the court "shall" consider in determining the best interest of the child. Those factors are as follows:

> (1) The love, affection, and other emotional ties between each party and the child.
>
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

After a thorough review of the record, we note that at the conclusion of the May 10, 2010 hearing, the matter was taken under advisement by the trial court and post-trial memoranda requested. The trial court issued its judgment on June 17, 2010. No written reasons for judgment were issued. Thus, we have no way of knowing what the trial court based its ruling on and whether it based its decision on the Article 134 factors, as it is required to do. We note in *Leger v. Leger*, 03-419, p. 1 (La.App. 3 Cir. 7/2/03), 854 So.2d 955, 956, this court suggested in a portion of its opinion

entitled "**Failure to Address Factors with Particularity,**" that we cannot assume that a trial court actually considered factors based simply on the fact there may be evidence in the record that would have allowed it to do so. Further, the trial court erroneously disregarded the agreed-upon stipulation between the parties and terminated child support to Jennifer prior to school beginning and awarded Jason the tax dependency exemption.

We cannot properly perform our appellate review under the circumstances; and, therefore, we elect to remand this case to the trial court for another hearing to determine the best interests of the child based on factors set out in Article 134. *See C.J.M. v. C.L.*, 08-128 (La.App. 3 Cir. 6/5/08), 987 So.2d 317, (wherein this court remanded the case back to the trial court due to its failure to properly discuss any of the factors of Article 134 in its custody determination.)

The plaintiffs remaining assignments of error are rendered moot.

## DECREE

For the above reasons, the judgment of the trial court is reversed and this matter is remanded to the trial court to proceed in accordance with this opinion. Costs of this appeal are assessed equally between the parties.

**REVERSED AND REMANDED.**