424 So.2d 479 (1982)
Fred Archie PARKER
v.
Deborah Slie, Wife of Fred Archie PARKER.
Deborah Slie, Wife of Fred Archie PARKER
v.
Fred Archie PARKER.
Nos. 82-CA-75, 82-CA-76.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
Writ Denied January 21, 1983.
Nelson J. Cantrelle, Jr. and Alan Gandolfi, Gretna, for plaintiff-appellee.
Wiley J. Beevers and Michael O'Farrell, Metairie, for defendant-appellant.
Before SAMUEL, KLIEBERT and GRISBAUM, JJ.
SAMUEL, Judge.
This matter (No. 82-CA-75) is a proceeding by Fred Archie Parker against his former wife, Deborah Slie, to effect a change of custody of their 7 year old son, James, *480 from the defendant mother to himself. The other matter (No. 82-CA-76), consolidated in the trial court, is an older suit for separation filed by the present defendant against the present plaintiff.
In May, 1982, plaintiff filed a verified petition seeking temporary custody and eventual permanent custody of the child on the basis that "irreparable psychological harm might come to the minor child when taken out of the state of Louisiana ..." The trial judge awarded plaintiff temporary custody by ex parte order (because he feared the child would be removed from his jurisdiction before a hearing could be held), and set the matter for hearing on May 28, 1982. The mother filed exceptions of lack of jurisdiction and improper venue, which the trial court referred to the merits. After a three-day hearing, there was judgment in favor of the plaintiff awarding him permanent custody of the child, thus impliedly overruling the exceptions. The defendant mother has appealed from that judgment.
On September 10, 1976, the Twenty-Fourth Judicial District Court for the Parish of Jefferson rendered a judgment of separation from bed and board between the parties. The judgment also provided that the mother constantly was to keep the father informed of the whereabouts of the child. By consent, custody of the child was given to the mother, with liberal visitation privileges in favor of his father.
The parties moved from Jefferson Parish, and on May 11, 1977, the Sixteenth Judicial District Court for the Parish of Iberia rendered a judgment of divorce between them. In the divorce judgment, custody of the child was granted to the father. On February 10, 1978, after a contested hearing, the same court changed custody from the father to the mother. This judgment awarded the father visitation privileges and also required that the mother keep the father informed of his son's whereabouts.
Subsequently, the mother moved several times to other places in Louisiana without informing the father of the child's whereabouts. In October, 1980, she took the child from Alexandria, Louisiana to live in Boulder, Colorado, but she did not inform the father of this move. The father attempted to visit the child in Alexandria, and there could only learn his former wife had taken the boy to an unknown Colorado location.
The mother's parents still live in Jefferson Parish, and the father attempted to locate his son by having their residence watched from time to time (plaintiff then lived and now lives in Raceland, Lafourche Parish, Louisiana) in the hope the child would be discovered on a visit to his grandparents. These efforts were fruitless until January, 1982, when he learned the child had been living with his maternal grandparents in Jefferson Parish since June, 1981 and had been attending school there since the beginning of the 1981 school year. The child had been in Colorado for approximately 8 or 9 months during which time he lived in two or more different places and attended two different schools.
Plaintiff began to visit his son on a fairly regular basis from January until May, 1982. In early May he learned the defendant was scheduled to come to Jefferson Parish to take possession of the child again. He was told she was going to the Bahamas either on vacation or to live, and he felt such a move would jeopardize his visitation privileges and might harm the child.
Prior to the end of the school year, he ascertained the boy had sufficient days in attendance in the Jefferson Parish school system so that an early removal from one school to another in another parish would not cause him to forfeit credit. At that time, plaintiff commenced this proceeding to obtain custody.
First addressing ourselves to the jurisdictional exception, we do not agree with defendant's contention that the district court had no jurisdiction. She argues she changed her domicile to Colorado, that pursuant to Louisiana law the domicile of a child is that of its custodial parent,[1] and *481 that under the Uniform Child Custody Jurisdiction Act (R.S. 13:1700, et seq.) a Louisiana court does not have jurisdiction.
The record is devoid of evidence showing, with sufficient certainty, that the defendant mother actually changed her domicile from Louisiana to Colorado. Although she testified she did move to Colorado with her son, she also stated that while there she moved on four different occasions within that state. The record contains none of the customary elements normally used to establish intent to live on a permanent basis in a parish other than Jefferson or in another state. Defendant did not show she was a Colorado voter, she did not produce a Colorado driver's license or Colorado tax returns, nor did she produce any evidence whatever to corroborate her testimony that she intended to live permanently in Colorado.
Even assuming, as both litigants suggest, that the determining law is our Uniform Child Custody Jurisdiction Act,[2] we hold the trial court had jurisdiction. The act contains the following provision (R.S. 13:1702) as to jurisdiction over custody matters:
"§ 1702. Jurisdiction
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody. Added by Acts 1978, No. 513, § 1, eff. Oct. 1, 1978."
A Louisiana district court has jurisdiction over a child under the circumstances of this case pursuant to Subparagraph A(2) of the above quoted statute. Both the child and his father, as well as mother, have "significant connections with this state" and "there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships ...." The child was in Colorado for only a short period of time. There is no evidence that he established any lasting friendships or other relationships there. While in Colorado for this short period, he moved several times, as stated above, and *482 attended two separate schools. On the other hand, he has attended school for the past year in Louisiana. His father and stepmother reside here. Both his paternal and maternal grandparents live in Louisiana, and the witnesses needed for a proper determination of custody (with the exception of the mother) now live in or close to Jefferson Parish.
A more difficult problem is presented by the exception of improper venue. The Uniform Child Custody Jurisdiction Act is concerned with avoiding jurisdictional competition and conflicts between courts of different states in matters of child custody.[3] The act has no application to venue, a matter involving the operation of courts within a state which does not involve possible conflicts with other states. Thus, insofar as venue is concerned, we look only to the law of Louisiana and do not consider the Uniform Act.
Code of Civil Procedure Article 41 defines venue as follows: "Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject." There is no specific provision in the Code of Civil Procedure governing venue only in custody actions. However, the general rule contained in Code of Civil Procedure Article 42(1), i.e., an action brought against an individual domiciled in the state shall be brought in the parish of his domicile, is applicable to custody actions.[4] Such actions usually, but not necessarily, are brought in the parish of proper venue for the principal action, and there appears to be some conflict among Louisiana circuit courts regarding the rules to be followed when the child is in this state but domiciled elsewhere (see, for example, the First Circuit case of Sims v. Sims, (La. App.1980), 388 So.2d 428, and the Third Circuit case of Lucas v. Lucas, (La.App. 1967), 195 So.2d 771). Because we believe it unwise to judicially set inflexible rules regarding venue in custody matters, we prefer the methodology used in Lucas over that used in Sims.
In the instant case, for the same reasons mentioned above in our discussion of the jurisdictional issue, the Jefferson Parish court is more convenient than the only other possible venue, Iberia Parish.[5] It appears that none of the individuals involved here have any connection with Iberia other than the fact that the plaintiff alone did spend some time there. It also appears that both litigants were able to fully present all evidence they desired to present. However, the matter of convenience is not the determining consideration.
Under the rule that an individual retains his last domicile until he actually establishes a new one, insofar as the records before us show, it appears that the defendant may still be domiciled in the Parish of Jefferson. Nonetheless, we prefer to base our conclusion as to venue on another ground. In Howard v. Howard, (La.App.1981), 409 So.2d 279, 280, on application for rehearing the court had this to say about the then very recent Supreme Court case of Lewis v. Lewis, (La.1981), 404 So.2d 1230:
"Since the Supreme Court now has said the obligation on the part of the parent to support a child does not arise from the marriage but from the act of paternity and that a judgment awarding support for a child has a legally independent basis and is not a mere incident of a separation decree which terminates with the dissolution of the marriage, we conclude that custody (like support) has a legally independent basis and is not simply incidental to the action for separation or divorce."
Thus, even assuming the defendant is a Colorado domiciliary, and therefore has no *483 domicile in Louisiana, the parish in which the child in suit was residing at the time of the filing of the proceeding for change of custody, Jefferson Parish, was a proper venue.[6]
On the merits, the trial judge's reasons for judgment state:
"Evidence at trial revealed one constant element which continually surfaced: both parents loved the child, wanted him and sincerely thought he or she could do a better job of rearing the child. The Court was, therefore, presented with the unpleasant, but necessary task of determining the custody which would be in the child's best interest and did this by examining the respective environments from February 10, 1978, date of the last judgment, to May, 1982.
Evidence indicated that Deborah J. Slie Parker immediately moved to Colorado, taking the child two thousand (2,000) miles away from the persons and things important to him. While there, they moved two (2) or three (3) more times within a period of approximately one (1) year. Further, during that period, there was testimony taken that Deborah J. Slie Parker had a "housemate", Kevin Gilfor, living with her. The Court feels that Deborah J. Slie Parker's own testimony indicated she knew there was something wrong with the situation for two reasons: (1) When her parents came to visit, the roommate left; and (2) She terminated the roommate situation very recently because, the Court believes, she felt it would reflect more favorably in these proceedings. The Court does note that for a twelve (12) month period, she voluntarily abrogated her custody by sending the child to live with her parents in Louisiana.
Two (2) experts, Drs. Coddington and Cowardin, each interviewed the child once. The Court was more impressed with Dr. Coddington's technique and evaluation and felt his opinions were more credible. Dr. Coddington stated that he felt custody should be given to Mr. Parker for numerous reasons, including the stability of that environment and the fact that the child's uncooperative behavior, poor school habits and emotional unrest had greatly improved during his stay with his father and as that relationship grew.
The minor child was interviewed in chambers and in the presence of counsel for both parties. The Court was impressed with the awareness of the child to the housemate situation and what the child personally desired. He liked Louisiana and his father better than Colorado and his mother because of his local friends, relatives and school. His recent behavorial improvement corroborated his statements.
Based on the foregoing, the Court felt it was in the best interest of the minor child, James Parker, that permanent custody be granted to his father, Fred Parker, with liberal visitation privileges being granted to his mother, Deborah J. Slie Parker."
We agree with the trial court's findings, reasons and conclusions.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] See Civil Code Article 39.
[2] Colorado is also a party signatory to this statute. See C.R.S. '73, XX-XX-XXX to XX-XX-XXX.
[3] In pertinent part, R.S. 13:1700 provides:

"A. The general purposes of this part are to:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being."
[4] Dupre v. Pelotto, (La.App.1976), 336 So.2d 329.
[5] Iberia being the parish in which the judgment of divorce was rendered.
[6] In addition to the fact that a Jefferson court rendered the judgment of separation.