hPEATROSS, J.
This appeal arises from the sustaining of Heather Grable Sisk’s (“Heather”) Exception of Lack of Subject Matter Jurisdiction and the dismissal of John Sisk’s (“John”) Rule for Custody of their minor child. In so ruling, the trial court stated that “the legal power and authority to adjudicate this matter, at this time, rests with the California courts pursuant to R.S. 13:1700-1706, CCP Art. 863, etc.” The court further held that the “home state” of the minor child in question is California. As a result of this ruling, Heather retained custody of the couple’s minor child. John now appeals. We affirm.

FACTS

One minor child was born to the couple on October 22, 2000, while the couple resided in California. They moved to Louisiana the following January and then returned to California on or around June 1, 2003. In September 2003, John left Heather and the child in California and subsequently filed for an Article 102 divorce on September 19, 2003,,in Ouachita Parish, Louisiana. Custody of the minor child was not put at issue in his original petition. Heather and the minor child continued to live in California until, around December 30, 2003, when she brought the minor child to Louisiana to visit his father for one month. At the end of that time, John indicated that he would not return the child to California.
In response, Heather filed a custody action and was awarded an ex parte custody order in California on January 29, 2004. John was notified by personal service of this action the following day and refused to return the child. The California judgment was made executory in Louisiana; and, on | ^February 2, 2004, a civil warrant was issued for the minor child. Law enforcement officers obtained custody of the child the same day.
A rule date was fixed and heard in a California court on February 17, 2004, and John made no appearance. After evidence was adduced, the California court rendered a custody judgment in favor of Heather. To date, John has taken no action to appeal, modify or annul the California judgment.
On July 14, 2004, John filed a Rule for Original Custody in Ouachita Parish, to which Heather responded with an Exception of Lack of Subject Matter Jurisdiction. The Rule was heard on September 14 and 15, 2004, and the Exception was sustained, dismissing John’s Rule for Custody. Finding that Louisiana was an inappropriate forum, the judgment further awarded Heather her airfare expenses. This appeal ensued.

DISCUSSION

Does a jurisdiction automatically become the home state of a child in custody proceedings on the mere presence of the child in the jurisdiction for a period of six (6) months?
John initially argues that California is not the home state of the minor child and that Heather’s intentions regarding her home state are irrelevant to these proceedings. Heather responds that “[t]he simple answer to this [issue] is yes.” John argues that a court' should consider the nexus of the child with a- state to determine his or her “home state.” He points out that the minor child was living in Louisiana at the *1239 time Heather filed pleadings in California in an attempt to regain custody of the child. He states that “[c]ourt’s [sic] deal with these types of episodes every single day in every ^single State of this entire country.” He cites a bevy of jurisprudence, including Parker v. Parker, 424 So.2d 479 (La.App. 5th Cir.1982), writ denied, 427 So.2d 1198 (La.1983);[1] Revere v. Revere, 389 So.2d 1277 (La.1980);[2] and Dillon v. Medellin, 409 So.2d 570 (La.1982).[3] From these cases, he reasserts that the nexus of child is paramount and failure to follow this line of jurisprudence would equate to “forum shopping.”
Similarly, John cites La. R.S. 13:1700(A)(3), which states that a court should weigh factors like care, protection, training and personal relationships in determining which state is better for the child. He argues that, although Heather was granted the ex parte order of custody in California, the minor child had spent his entire life growing up in Louisiana. |4 He further points to La. R.S. 13:1705(0 for the proposition that any court petitioned in a custody matter should first determine whether or not dissolution proceedings are pending in another state. John argues that 13:1700(A)(3) and 13:1705(0 mirror the Uniform Child Custody Jurisdiction Act (“UCCJA”), which was adopted by California. He further asserts that Heather and her attorney intentionally conspired to alter the custody petition and “conceal from the California courts the fact that the parties had already drafted a Joint Custody agreement....” John states that a California court would never have accepted Heather’s filing had it been aware that custody was “at issue.”
John.also points out that, at a hearing, Heather offered to allow the minor child to visit John, provided the visitation would not exceed 60-67 days per year and the parties mutually agreed to grant California jurisdiction, even, though no one lived *1240 there at that time. John argues that “outlandish” custodial arrangements (which he asserts is the case here) are detrimental to the best interest of the child. In support of this argument, John cites several cases, including Christian v. Christian, 535 So.2d 842 (La.App. 2d Cir.1988);[4] Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987);[5] and Adams v. Adams, 441 So.2d 490 (La.App. 2d Cir.1983).[6] He |5asserts that Heather has forced him to agree to out-of-state jurisdiction so that she could retain leverage “in the extortion of unsuitable, unfavorable and even detrimental” custodial arrangements regarding the minor child.
In summary, Jbhn argues that the minor child has spent his entire life growing up in Louisiana and only visited California for approximately seven months in 2003 before returning to Louisiana. He states that “not one ... case from any jurisdiction in this country” supports the actions taken by Heather and, for these reasons, prays that this court reverses the lower court’s rulings and award him custody of the minor child.
Heather responds that John’s argument of looking to the nexus of the child to determine a home state is without merit. She states that the only place the minor child lived for six continuous months was California — a fact conceded by John at the time of filing. To buttress her assertion, she points to La. R.S. 13:1701(5), which provides:
“Home state” means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
| fiShe points out that the word “nexus” is nowhere to be found in this statute. Similarly, she responds to John’s argument that the minor child was not located in California at the time of filing by pointing to La. R.S. 13:1702(C), which provides that “[plhysical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine custody.”
Finally, Heather responds in rebuttal to John’s argument that custody was already *1241 “at issue” at the time of filing. Heather points to a colloquy between her attorney, Layne Adams, and John at the September 19, 2003 hearing, stating:
Adams: Q. Okay, so you’re not asking the Court to address the custody issue in the original proceeding?
John: A. That’s right. At that time.
Heather points out that custody was not put in issue until July 14, 2004, some fourteen (14) months after the child ceased to live in Louisiana. For these reasons, she argues that John’s first assignment-of error is,meritless. We agree.
The record in the ease sub judice indicates that the trial court was not manifestly erroneous in sustaining Heather’s Exception for Lack of Subject Matter Jurisdiction and in finding that California is the child’s home state. Since the Louisiana divorce proceedings did not involve the issue of child custody (per John’s admission), there were no other court proceedings involving the custody of the minor child.
First, the trial court properly found California to be the child’s home state. La. R.S. 13:1701(5) states that “home state” refers to a state where the minor child has lived with a parent for six consecutive months. Further, |7La. R.S. 13:1702(C) specifically states that physical presence of the child is not a prerequisite for jurisdiction to determine custody. The record in the case sitb judice reflects that the only place the minor child lived for six consecutive months was California.[7]
Similarly, La. R.S. 13:1712 states:
The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this Part or which was made under factual circumstances meeting the jurisdictional standards of the Part, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this Act.
John was notified on January 30, 2004, of the Ex Parte Order in California and was also notified of the hearing on February 17, 2004. Despite having received these notifications, John failed to file a pleading or a motion to the court or take any similar action.
We further reject John’s argument that custody was already “at issue” at the time of filing. John’s pleadings, filed September 19, 2003, state, in pertinent part:
One child was born of this marriage, •namely [minor child’s name], born on or about October 22, 2000. Petitioner and Defendant have agreed that the child will maintain his principal place of residence with Defendant at this time. The parties have also agreed to work out a suitable custody, visitation and support arrangement between themselves and are not asking this court to address [sic] same here. (Emphasis ours.)
The colloquy between John and Mr. Adams, Heather’s attorney, discussed supra, further supports our finding. As such, we reject this argument.
| RSecond, we conclude that the trial court correctly sustained the exception for lack of subject matter jurisdiction. La. R.S. 13:1713(A) states:
A. If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially *1242 in accordance with this Part or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.
We recognize that a California court rendered judgment in this case; and, by doing so, it retained jurisdiction of this matter. Accordingly, it follows that, per La. R.S. 13:1713(A), supra, we cannot modify the decree in this case. For the reasons discussed herein, we reject John’s first assignment of error. . .
Did the 4th District Court commit reversible error in refusing to quash the Louisiana civil warrant to remove the child from his home in Louisiana?
John next argües that he was never served with the civil warrant used to take the minor child from his Louisiana home and, accordingly, that his motion to quash said warrant was incorrectly denied. Heather responds that, under Louisiana law: (1) service to the parent is not required; (2) John was allowed to examine the warrant; and. (3) even if it was quashed, it would not make a difference in the outcome of these proceedings.
John argues that the civil warrant used to remove the minor child from his home was obtained illegally as it was based “wholly upon the falsified and altered pleadings made to the California courts.” He states that, because he was not given a copy of the alleged fraudulent civil warrant at issue, the trial court erred by not quashing it.
10Heather responds by pointing to La. R.S. 9:343, governing civil warrants, which states, in pertinent part:
Upon presentation of a certified copy of a custody and visitation rights order rendered by a court of this state, together with the sworn affidavit of the custodial parent, the judge, who shall have jurisdiction for the limited purpose of effectuating the remedy provided by this Section by virtue of either the presence of the child or litigation pending before the court, may issue a civil warrant directed to law enforcement authorities to return the child to the custodial parent pending further order of the court having jurisdiction over the matter.
Accordingly, Heather points out that, per the statute, service is not required as a civil warrant is “directed to law enforcement authorities,” not the parent. Second, she points to the transcript of the proceedings in which the following colloquy occurred during John’s cross-examination of Heather:
John: Q: I just want to touch on this briefly. When you came and picked up [the minor child] with the police officer in West Monroe, Louisiana, I was — we were all standing in my living room at my home, right?
Heather: A: Yes
John: Q: Okay. I think you testified . earlier that you had a civil warrant and you were trying to introduce that into evidence, is that right?
Heather: A: Yes.
John: Q: And I asked could I see it didn’t I?
Heather: A: Yes.
John: Q: And did you let me see it?
Heather: A: Yes.
After this transpired, John asked the court for an “oral motion to quash” the civil warrant, which the court denied, stating that, even if it was quashed, the civil warrant had nothing to do with the proceedings at issue, a point Heather reiterates in her brief. In summary, Heather argues that this issue is meritless. We agree.
*1243 |inThe record of the case sub judice reflects that the trial court was correct in denying John’s motion to quash. John has offered no law to support this assignment of error; and, further, our review of the record reveals that, even if said motion had been granted, it would have had no effect on the outcome of these proceedings. Similarly, the record reflects, and John admitted in his own cross-examination, that he had an opportunity to review the civil warrant before the minor child was removed from his home. Given these conclusions, coupled with the language of La. R.S. 9:343, we reject John’s argument.
Did the 4th District Court commit reversible error in admitting un-authenti-cated foreign pleadings into evidence over timely objection?
John next argues that the trial court erred by allowing into evidence a check list representing documents served upon him by Buddy Pearson, a witness in these proceedings.[8] Heather argues, to the contrary, that Mr. Pearson’s testimony was “straight forward and to the point.”
John points out that Mr. Pearson stated that he was unable to remember exactly which documents he served in this case. Mr. Pearson did state, however, that he had made a checklist of those which he served. A copy of his checklist could not be produced at trial. Heather’s attorney provided Mr. Pearson with a blank checklist and a stack of documents for the witness to review while on the stand. From this list and stack of documents, Mr. Pearson attempted to deduce which ones he had served upon John and indicated as much on the blank checklist. John points out that Mr. Pearson then admitted that he would be unable to say with great 11T certainty which documents were served without his own checklist and further stated that the documents provided to him on the stand represented an incomplete list, at'best. John then objected to the admission into evidence of these documents and was overruled. John argues that, without Mr. Pearson’s own list and, given his statements on the stand, the trial court erred in overruling his objection to the documents.
Heather responds that her husband’s arguments are misplaced. She states that his objection to the entry of these documents rests on the fact that Mr. Pearson could not testify that the documents at issue were exactly those which he served. She points out, however, that all of the copies presented to Mr. Pearson were titled the same; were all filed prior to January 30, 2004, and were all captioned “Sisk v. Sisk.” Heather argues that it is improper to suggest that a process server memorize and be able to recall a document that he or she served some seven months earlier.
Heather further points to the record which reflects that Mr. Pearson’s service was accepted as proper by the California court and that John admitted that he was served with custody papers by Mr. Pearson. She states that the record also reflects that John was aware that, if he did not return the minor child by January 30, certain provisions would go in effect and a hearing had been' set for February 17, 2004. In summary, Heather argues that this issue is meritless as there was little doubt that John was personally served with process.[9] We agree.
| ij>Our review of the record in the case sub judice reflects no error in the trial judge’s decision to allow the entry of these documents into evidence. At trial on *1244 this matter, the following colloquy between John and Heather’s attorney occurred:
Mr. Adams: Q: Okay. And do you remember being served with some papers from California?
John: A: Yes.
[[Image here]]
Mr. Adams: Q: Okay. But you were in fact served the papers from California?
John: A: I did receive some papers.
[[Image here]]
Mr. Adams: Q: .... Do you recall being served [process] wherein Heather was granted sole custody [of the minor child]?
John: A: I remember seeing a document like that. I don’t know if it was that one. But, I remember seeing a document like that. That addressed that issue, yes.
Given the above transaction, and in the absence of any jurisprudence to the contrary, nothing in the record reflects that the trial judge was in error in ruling that Mr. Pearson’s checklist is admissible. For these reasons, we reject this assignment of error.
Did the 4th District Court commit reversible error in ordering plaintiff-appellant to pay costs and travel expenses of defendant-respondent in these divorce proceedings?
John next argues that the trial court erred by requiring him to pay for Heather’s airline ticket and travel expenses incurred in pursuing this matter. Heather responds, to the contrary, that the trial court was correct in finding California to be the appropriate forum for this matter and, accordingly, that the trial judge’s ruling was not in error.
John states that “[Heather’s] illicit methods of forum circumvention have exponentially increased the costs and expenses incurred by [him]” injjthis litigation. He states that Louisiana recognizes the English common law doctrine of “Unclean Hands,”[10] which he claims holds that, “if you conspire to circumvent the laws of jurisdiction through fraudulent, deceptive and illegal activities, don’t come crying to us for help to recover the costs and losses which you have incurred when your contrived plan implodes.” John states that the Unclean Hands doctrine has no more suitable application than to the case sub judice.
John further states that “[t]he spirit of [the Unclean Hands doctrine] is not furthered .by an application of CCP art. 863B in these proceedings.” La. C.C.P. art. 863(B) states, in part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
From this statute, John states that it makes no sense for a litigant to petition a California court over custody matters in *1245 volving a North Carolina resident.[11] He states that “[s]uch a farcical idea would be worthy of sanctions pursuant to C.C.P. art. 863 itself.”
1 ^Heather responds that, if John, once a licensed attorney in both Louisiana and California, had more thoroughly researched the law, he would realize that he has shown no basis on which subject matter jurisdiction can exist. She points out that subject matter jurisdiction cannot be conferred by consent, per La. C.C.P. art. 3. Heather further responds that John’s assertion that jurisdiction based on custody is ancillary to a divorce is misplaced. She cites Howard v. Howard, 409 So.2d 279 (La.App. 4th Cir.1981), stating that child custody has an independent basis and is not merely incidental to a. divorce.
Heather further points to five factors which she argues undermine John’s contentions. First, she states that his allegation that California had no jurisdiction is baseless as the record clearly indicates that, on January 29, 2004, the minor child resided in that state. Second, Heather states that John’s argument that the personal service made on January 30, 2004, was insufficient is without merit because the testimony deduced at trial suggests otherwise. Third, she states that John’s assertion that the California court should have stayed its proceeding because a custody proceeding was pending in Louisiana is meritless since, by his own admission, the issue of custody was not pending at the January 29, 2004 hearing. She also points out that he failed to raise this in his earlier filed pleadings. Fourth, Heather asserts that John’s argument that California is an improper forum, pursuant to La. R.S. 13:1706, is without merit. She states that this statute assumes concurrent jurisdiction between two states and that this issue was- more properly addressed by filing a motion in a California court — which he did not l1Bdo. Fifth, she maintains that John’s assertion that the “Unclean Hands” doctrine should apply is meritless as this should have been- pled in a California court — which-he did not do.
Heather argues, in the alternative, that, due to John’s failure to contest her California custody action, there can be no other conclusion but that this action was instituted to harass her and cause her financial harm. She cites La. R.S. 13:1706(G), which states:
G. If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys’ fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.
She states that the trial . court’s ruling should be affirmed and should be modified, to also award to her the costs of a rental car and lost wages, pursuant to La. R.S. 13:1706(G), supra, and La. C.C.P. art. 863(B), supra. Heather further cites Pease v. Pease, 00-0941 (La.App. 1st Cir.9/28/01), 809 So.2d 283, wherein the court stated:
The court, by request or on its own motion, may also impose sanctions under La. C.C.P. art. 863. By signing a pleading or verification, a party or attorney certifies that the information in the pleading is ‘well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law;> and that it is not interposed for any improp *1246 er purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.’ If the party or attorney violates the provisions of article 863 B, the sanctions may include ‘reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney’s fee.’ (Citations omitted.)
11fiFrom this, she further cites to the Judgment of September 16, 2004, which stated:
The expenses of [Heather’s] airfare are, hereby, taxed as cost against [John], [Heather’s] request for reasonable attorney’s fees may be ruled on by separate motion ... all other requested relief is denied. (Emphasis Heather’s.)
Heather states, however, that the court erred by refusing to award the costs of a rental car and lost wages in making its ruling. She states that it further erred when it failed to rule on attorneys fees and costs. Accordingly, she states that the judgment should be modified to award her $1,952.50.[12]
Heather further states that John’s appeal should be considered frivolous. She bases this argument on the premise that John has not provided any new basis under which subject matter jurisdiction can be found in Louisiana. She states that the language John uses in his brief is discourteous and worthy of sanctions.[13] In support of her position, she cites Uniform Rule 2-12.4 of the Courts of Appeal, which states:
The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, .or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.
11vFrom this, she asks this court to sanction John for his insulting criticism; which is “cléarly not accurate.”
Based on our reading of the record in the case sub judice we are unable to say that the trial court was manifestly in error in assessing expenses as it did. Accordingly, we affirm the trial court’s award to Heather of airfare expenses and denial of other requested relief.

CONCLUSION

For the reasons set forth herein, we affirm the judgment of the trial court in favor of Heather Grable Sisk. Costs of this appeal are assessed to the PlaintifPAppel-lant John Sisk.
AFFIRMED.
APPLICATION FOR REHEARING ' Before BROWN, GASKINS, CARAWAY, PEATROSS and LOLLEY, JJ.
Rehearing denied.

. It is noted by this court, however, that John merely cites these cases without referencing any specific holding or deriving any legal argument therefrom.
Parker held, inter alia, that where the custodial parent failed to sufficiently demonstrate that she had actually changed her domicile from Louisiana to Colorado, and where bqth the child and non-custodial parent, as well as custodial parent, had significant connections with Louisiana and child was in Colorado for only a short period duration and during which he moved several times and attended two different schools, Louisiana courts had jurisdiction over the change of custody proceeding under La. R.S. 13:1702(A)(2).

. Revere held, inter alia, that a child custody decree of one state may be modified not only by courts of that state, but also by courts of another state, because the full faith and credit clause has limited application in custody cases.
Revere further stated that, under the Uniform Child Custody Jurisdiction Act ("UC-CJA”), a Louisiana court competent to adjudicate child custody also has jurisdiction to render initial decrees or modifications when Louisiana is the child's home state and when the child and at least one contestant maintain significant. connections with Louisiana such that it is in best interest of the child that Louisiana assume jurisdiction under La. R.S. 13:1700 and 13:1702(A)(l-2).

.Dillon held,'inter alia, that, under the UC-CJA, the proper court for deciding custody ramifications of incidents allegedly taking place in a Louisiana home and between Louisiana residents — a divorced mother and her child — was the Louisiana court, not the Texas court in which suit had' been initiated by Texas father before the end of court ordered Texas visitation under La. R.S. 13:1702.
In addition, Dillon held that, under UCCJA, adopted in Louisiana, and its counterpart statute in Texas, jurisdiction over custody of child who was domiciled in Louisiana did not vest in Texas courts when child was visiting its divorced father in Texas; and, accordingly, a county court in Texas had no jurisdiction when it modified an original Texas decree awarding custody of child to mother, per La. R.S. 13:1702(A)(3).

. Christian held, inter alia, that child custody decree granting a father joint custody of his four-year-old son with primary residential care granted to father subject to certain visitation rights by mother was a sole custody award rather than a joint custody award; and, accordingly, determination was required as to whether sole custody decree was in child’s best interest. La. C.C. art. 146.
The Christian court further held that, under La. C.C. art. 146, when a trial court finds a decree of joint custody is in best interest of child, it does not necessarily require equal sharing of physical custody; all that is mandated by legislative scheme is substantial equality of time.

. Foy held, inter alia, that a joint child custody award, allowing .mother about 48 days of physical contact with parties' children during the year, including first weekend of every month, Mother's Day, three weeks in summer and ■ alternating holidays of Thanksgiving, Christmas, the Fourth of July and Easter, was tantamount to award of sole custody to father and did not constitute meaningful joint custody plan. The court further stated that the award denied the mother frequent and continuing physical contact with the children, especially during the summer months.

.Adams held, inter alia, that a judgment in consolidated actions for separation awarding joint custody of minor child of the marriage, but naming one parent as "domiciliary parent,” with other parent having reasonable visitation rights, was not award of "joint custody” intended by statute providing that custody shall be awarded, according to best interest of child, to both parents jointly as first preference. La. C.C. art. 146.

. The minor child was domiciled in California • for seven months at the time of filing.

. Mr. Pearson is a private investigator and process server.

. Neither party cited any jurisprudence for these arguments.

. Although John does not provide a citation for this assertion, the Unclean Hands Doctrine falls under La. R.S. 13:1707, and states that a court with jurisdiction may decline to exercise jurisdiction based on the wrongful or reprehensible conduct of one party.

. The record indicates that, at the time of the hearing on the exception, Heather and the minor child had moved to Charlotte, North Carolina.

. Heather arrives at this figure by itemizing the following: $168 for the rental car; $208 for lost wages; $1,600 in attorney's fees; $100 in court costs; $87.50 in deposition fees; $45 in subpoena fees and $120 for the court reporter. Her wage rate is calculated by multiplying her hourly pay ($13 per hour) by the two days she missed.

. Heather references several passages of John's brief that accuse Heather and her attorney of, inter alia, deceit, scheming, exploitation, falsification of documents and circumvention of the law.